1  David Fernandes (SBN 280944)
   BARON & BUDD, P.C.
2  3102 Oak Lawn Avenue, Suite 1100
   Dallas, TX 75219
3  Tel.: (214) 521-3605
   Fax: (214) 279-9915
4  Email: dfernandes@baronbudd.com

5  *Counsel for Plaintiffs*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
8/07/2025 12:05 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Nunez, Deputy Clerk**

6           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                      **COUNTY OF LOS ANGELES**

8  TIANA COUSINS, KEVIN ALVAREZ,        CASE NO. 25STCV23461
   SALVADOR AMBRIZ, THOMAS
9  ANNALA, DAVID BECERRA, SEAN          **COMPLAINT FOR DAMAGES AND**
   BIELAWSKI, JUSTIN BRADLEY,           **DEMAND FOR JURY TRIAL**
10 ROBBYN BUKOWSKI, JOSEPH
   BURNHAM, JOHNNIE BUTTRAM, MARY       (1) Strict Liability Design Defect- Consumer
11 CERVERA, CHRIS CHACE, KYLE           Expectation Test
   COPELAND, AUDIE CROUSE, JOSEPH       (2) Strict Liability Design Defect- Risk
12 CROZER, DAVID CUTTING, RAMON         Benefit Test
   DAVID, JR., JOHN DAVIES, KEVIN DE    (3) Strict Liability Failure to Warn
13 MATA, JOSEPH DEAKIN, MATTHEW         (4) Negligence- Duty to Warn
   DEANE, DUSTIN EGGLESTON, DEBBIE      (5) Negligence- Failure to Recall
14 ELMORE, LINDA FILLIO, TERRI FITTRO,  (6) Violation of the Uniform Voidable
   ANTHONY FRANK, RHESA FRENCH,         Transfer Act
15 LYNETTE GAMEZ, PEARL GARCIA,         (7) Civil Conspiracy
   SERENA GARCIA, JACK GENTRY,
16 MICHAEL GILMORE, PEGGI GIOLETTI,
   CYNTHIA GLASGOW, MANUEL
17 GONZALES, JULIO GRAPA, FREDERICK
   HAJDUK, MICHAEL HARDY, MARTIN
18 HEIMERDINGER, ELIAZAR
   HERNANDEZ, THERESA HERRING
19 TYLER, NICKI HEYMAN, BUCKY
   HOGUE, BARRY HOLTZER, DANIEL
20 IRISH, ELVIS JAMESON, JONATHAN
   JIMENEZ, MIGNON KELLY, DOUGLAS
21 KEMMIS, RICKY LEE, MATTHEW
   LEIGHTON, JASON LORING, KIMBERLY
22 MEYERS-BALDWIN, ASHLEY MICKEL,
   STEVEN MONTOYA, RAYMOND OTERO,
23 JOSEPH PANGELINAN, MAURICE
   PEREZ, MICHAEL PISCIOTTA, STEVE
24 POPE, JR., ALFONSO PORCHAS,
   PATRICIA PORRAS, MARTIN RAMIREZ,
25 DANIELLE ROBERT, DYAN ROBLES,
   ROBIN ROSE, EDWARD SEQUEIRA,

(line numbers continue 26, 27, 28 in margin)

**Exhibit A, Page 8**

1  ROBERT SHAW, LEE SHELDON,
   WILLIAM SIMMONS, SUSAN SIMMONS,
2  FREDERICK SINFIELD, TERRY
   SPANGLER, LINDA SPELLACY-SCOTT,
3  SOMER STUDEBAKER, REXX THOMAS,
   LOUIS TOUSIGNANT, MATTHEW
4  TUISEE, TIMOTHY TURBEVILLE,
   DANNY VELEZ, BOBBY WEBSTER,
5  SKYLAR WENDEL, ANTHONY
   WHITESIDE, JIHOON WON, ANN
6  WORSHAM, AND RYAN YAHIRO,
7
8  Plaintiffs,
9  vs.
10 3M COMPANY (f/k/a Minnesota Mining and
   Manufacturing, Co.); AGC CHEMICALS
11 AMERICAS, INC.; AGC, INC. (f/k/a Asahi
   Glass Co., Ltd.);  ARCHROMA U.S., INC.;
12 ARKEMA, INC.; BASF CORPORATION;
   BUCKEYE FIRE EQUIPMENT CO.;
13 CHEMDESIGN PRODUCTS, INC.;
   CHEMGUARD, INC.; CLARIANT
14 CORPORATION; CORTEVA, INC.;
   DUPONT DE NEMOURS, INC.; DYNAX
15 CORPORATION; E.I. DU PONT DE
   NEMOURS AND COMPANY; THE
16 CHEMOURS COMPANY; THE
   CHEMOURS COMPANY FC, LLC; TYCO
17 FIRE PRODUCTS, LP, AND JOHN DOE
   DEFENDANTS 1-49,
18
   Defendants.
19
20    **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**
21
22         COME NOW Plaintiffs, Tiana Cousins, Kevin Alvarez, Salvador Ambriz, Thomas Annala,
23 David Becerra, Sean Bielawski, Justin Bradley, Robbyn Bukowski, Joseph Burnham, Johnnie
24 Buttram, Mary Cervera, Chris Chace, Kyle Copeland, Audie Crouse, Joseph Crozer, David
25 Cutting, Ramon David Jr., John Davies, Kevin De Mata, Joseph Deakin, Matthew Deane, Dustin
26 Eggleston, Debbie Elmore, Linda Fillio, Terri Fittro, Anthony Frank, Rhesa French, Lynette
27 Gamez, Pearl Garcia, Serena Garcia, Jack Gentry, Michael Gilmore, Peggi Gioletti, Cynthia
28 Glasgow, Manuel Gonzales, Julio Grapa, Frederick Hajduk, Michael Hardy, Martin Heimerdinger,

**Exhibit A, Page 9**

1    Eliazar Hernandez, Theresa Herring Tyler, Nicki Heyman, Bucky Hogue, Barry Holtzer, Daniel

2    Irish, Elvis Jameson, Jonathan Jimenez, Mignon Kelly, Douglas Kemmis, Ricky Lee, Matthew

3    Leighton, Jason Loring, Kimberly Meyers-Baldwin, Ashley Mickel, Steven Montoya, Raymond

4    Otero, Joseph Pangelinan, Maurice Perez, Michael Pisciotta, Steve Pope, Jr., Alfonso Porchas,

5    Patricia Porras, Martin Ramirez, Danielle Robert, Dyan Robles, Robin Rose, Edward Sequeira,

6    Robert Shaw, Lee Sheldon, William Simmons, Susan Simmons, Frederick Sinfield, Terry

7    Spangler, Linda Spellacy-Scott, Somer Studebaker, Rexx Thomas, Louis Tousignant, Matthew

8    Tuisee, Timothy Turbeville, Danny Velez, Bobby Webster, Skylar Wendel, Anthony Whiteside,

9    Jihoon Won, Ann Worsham, and Ryan Yahiro by and through undersigned counsel, and bring this

10   action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC

11   Chemicals Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema

12   Inc., BASF Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc.,

13   Chemguard, Inc., Clariant Corporation, Corteva, Inc., DuPont De Nemours, Inc., Dynax

14   Corporation, E. I. Du Pont de Nemours and Company, The Chemours Company, The Chemours

15   Company FC, LLC, Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul

16   Company), and John Doe Defendants 1-49.  Plaintiffs hereby allege, upon information and belief,

17   as follows:

18
19                          I.       SUMMARY OF THE CASE

20        1.       Plaintiffs bring this action against Defendants who manufactured aqueous film-

21   forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The

22   AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS")

23   including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic

24   acid ("PFOS").

25        2.       PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS,

26   PFOA, and/or their chemical precursors, are or were components of AFFF products, which are

27   firefighting suppressant agents used in training and firefighting activities for fighting Class B fires.

28   Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable

1    liquids.

2          3.    PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate

3    in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also

4    associated with multiple and significant adverse health effects in humans, including but not limited

5    to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and

6    pregnancy-induced hypertension.

7          4.    At various times from the 1960s through today, Defendants designed,

8    manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or

9    their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the

10   fluorosurfactants and/or perfluuorinated chemicals contained in AFFF.

11         5.    This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and

12   fluorosurfactants collectively as "Fluorosurfactant Products."

13         6.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the

14   knowledge that firefighters would be exposed to these toxic compounds during fire protection,

15   training, and response activities even when the AFFF was used as directed and intended by the

16   manufacturer.

17         7.    Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the

18   knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the

19   environment, including the drinking water supply, even when the AFFF was used as directed and

20   intended by Defendants.

21         8.    Due to the widespread PFAS contamination caused by Defendants'

22   Fluorosurfactant Products, including the contamination of Plaintiffs' drinking water supplies,

23   Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a

24   direct result of their exposure to the PFAS contamination present in their drinking water supplies.

25         9.    Plaintiffs, as residents and those who visited, worked, or resided in the

26   contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

27        10.    Plaintiffs' unwitting exposure to PFAS in their water supply as a result of

28   Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

**Exhibit A, Page 11**

1    11.    Plaintiffs file this lawsuit to recover compensatory and all other damages, including

2    but not limited to past and future (1) expenses for care, treatment and hospitalization incident to

3    their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or

4    earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical

5    impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of

6    life; and (9) exemplary damages.

7                                         **II.    PARTIES**

8    **A.  <u>Plaintiffs</u>**

9    12.    Plaintiff Tiana Cousins is a citizen and resident of Los Angeles, California in Los

10   Angeles County. From approximately 1990 to 2025, Plaintiff Tiana Cousins was regularly exposed

11   to PFAS through drinking water at her residence in Los Angeles, California.

12   13.    On or about 2012, Plaintiff Tiana Cousins was diagnosed with kidney cancer in

13   Torrance, California and subsequently underwent a nephrectomy.

14   14.    Plaintiff Kevin Alvarez is a citizen and resident of Cypress, California. From

15   approximately 1998 to 2016, Plaintiff Kevin Alvarez was regularly exposed to PFAS through

16   drinking water at residences in Los Angeles, California; Maywood, California; Downey,

17   California; Norwalk, California; and Bell Gardens, California.

18   15.    On or about October 2014, Plaintiff Kevin Alvarez was diagnosed with testicular

19   cancer in Los Angeles, California and subsequently underwent a left orchiectomy.

20   16.    Plaintiff Salvador Ambriz is a citizen and resident of Chino, California. From

21   approximately 1976 to 2025, Plaintiff Salvador Ambriz was regularly exposed to PFAS through

22   drinking water at residences in Huntington Park, California; Burbank, California; and Chino,

23   California.

24   17.    On or about October 2024, Plaintiff Salvador Ambriz was diagnosed with kidney

25   cancer in Upland, California and subsequently underwent a radical right nephrectomy.

26   18.    Plaintiff Thomas Annala is a citizen and resident of La Puente, California. From

27   approximately 2001 to 2019, Plaintiff Thomas Annala was regularly exposed to PFAS through

28   drinking water at residences in Garden City, Idaho; Covina, California; and San Dimas, California.

**Exhibit A, Page 12**

19.    On or about December 22, 2016, Plaintiff Thomas Annala was diagnosed with kidney cancer in Downey, California and subsequently underwent a partial left nephrectomy.

20.    Plaintiff David Becerra is a citizen and resident of Riverside, California. From approximately 1990 to 2025, Plaintiff David Becerra was regularly exposed to PFAS through drinking water at his residence in Riverside, California.

21.    On or about 2014, Plaintiff David Becerra was diagnosed with testicular cancer in Victorville, California and subsequently underwent a left orchiectomy.

22.    Plaintiff Sean Bielawski is a citizen and resident of Carlsbad, California. From approximately 1990 to 2020, Plaintiff Sean Bielawski was regularly exposed to PFAS through drinking water at his residence in Oceanside, California.

23.    On or about July 5, 2023, Plaintiff Sean Bielawski was diagnosed with kidney cancer in Oceanside, California and subsequently underwent a radical right nephrectomy.

24.    Plaintiff Justin Bradley is a citizen and resident of Raleigh, North Carolina. From approximately 1981 to 2010, Plaintiff Justin Bradley was regularly exposed to PFAS through drinking water at residences and schools in Salt Lake City, Utah; Taylorsville, Utah; and Livermore, California.

25.    On or about August 13, 2013, Plaintiff Justin Bradley was diagnosed with testicular cancer in Ann Arbor, Michigan and subsequently underwent an orchiectomy.

26.    Plaintiff Robbyn Bukowski is a citizen and resident of Burbank, California. From approximately 1978 to 2025, Plaintiff Robbyn Bukowski was regularly exposed to PFAS through drinking water at residences in Gadsen, Alabama; Auburn, Alabama; New Orleans, Louisiana; Burbank, California; and Los Angeles, California.

27.    On or about March 7, 2022, Plaintiff Robbyn Bukowski was diagnosed with kidney cancer in Calabasas, California and subsequently underwent a radical left nephrectomy.

28.    Plaintiff Joseph Burnham is a citizen and resident of Montebello, California. From approximately 1988 to 2005, Plaintiff Joseph Burnham was regularly exposed to PFAS through drinking water at residences in El Monte, California.

29.    On or about 2007, Plaintiff Joseph Burnham was diagnosed with testicular cancer

1    in Los Angeles, California and subsequently underwent a left orchiectomy.

2        30.    Plaintiff Johnnie Buttram is a citizen and resident of Sharon, Pennsylvania. From

3    approximately 2008 to 2010, Plaintiff Johnnie Buttram was regularly exposed to PFAS through

4    drinking water at his residence in Sun City, California.

5        31.    On or about August 2017, Plaintiff Johnnie Buttram was diagnosed with kidney

6    cancer in Hermitage, Pennsylvania and subsequently underwent a radical right nephrectomy.

7        32.    Plaintiff Mary Cervera is a citizen and resident of San Diego, California. From

8    approximately 1987 to 2025, Plaintiff Mary Cervera was regularly exposed to PFAS through

9    drinking water at residences in San Diego, California; National City, California; Spring Valley,

10    California; and San Jose, California.

11        33.    On or about July 2021, Plaintiff Mary Cervera was diagnosed with kidney cancer

12    in San Diego, California and subsequently underwent a radical right nephrectomy.

13        34.    Plaintiff Chris Chace is a citizen and resident of Garden Grove, California. From

14    approximately 2005 to 2025, Plaintiff Chris Chace was regularly exposed to PFAS through

15    drinking water at residences in Garden Grove, California and Anaheim, California.

16        35.    On or about February 18, 2021, Plaintiff Chris Chace was diagnosed with testicular

17    cancer in Fountain Valley, California and subsequently underwent a right orchiectomy.

18        36.    Plaintiff Kyle Copeland is a citizen and resident of Rohnert Park, California. From

19    approximately 2002 to 2025, Plaintiff Kyle Copeland was regularly exposed to PFAS through

20    drinking water at residences in Santa Rosa, California and Oceanside, California.

21        37.    On or about July 29, 2019, Plaintiff Kyle Copeland was diagnosed with testicular

22    cancer in Petaluma, California and subsequently underwent a right orchiectomy.

23        38.    Plaintiff Audie Crouse is a citizen and resident of Valley, Alabama. From

24    approximately 1971 to 2018, Plaintiff Audie Crouse was regularly exposed to PFAS through

25    drinking water at residences and workplaces in Fort Jackson, South Carolina; Los Angeles,

26    California; and Poco Rivera, California.

27        39.    On or about January 8, 2025, Plaintiff Audie Crouse was diagnosed with kidney

28    cancer in Opelika, Alabama and subsequently underwent a radical right nephrectomy.

**Exhibit A, Page 14**

40.     Plaintiff Joseph Crozer is a citizen and resident of National City, California. From approximately 1994 to 2025, Plaintiff Joseph Crozer was regularly exposed to PFAS through drinking water at residences in San Juan Capistrano, California; Dana Point, California; and San Clemente, California.

41.     On or about November 17, 2015, Plaintiff Joseph Crozer was diagnosed with kidney cancer in San Diego, California and subsequently underwent a radical right nephrectomy.

42.     Plaintiff David Cutting is a citizen and resident of Upland, California. From approximately 1970 to 2025, Plaintiff David Cutting was regularly exposed to PFAS through drinking water at residences and schools in Upland, California and Ontario, California.

43.     On or about October 14, 2016, Plaintiff David Cutting was diagnosed with kidney cancer in Duarte, California and subsequently underwent a radical right nephrectomy.

44.     Plaintiff Ramon David, Jr. is a citizen and resident of San Ramon, California. From approximately 2001 to 2025, Plaintiff Ramon David, Jr. was regularly exposed to PFAS through drinking water at residences in San Leandro, California; Castro Valley, California; Pleasanton, California; Dublin, California; and San Ramon, California.

45.     On or about March 28, 2023, Plaintiff Ramon David, Jr. was diagnosed with kidney cancer in Walnut Creek, California and subsequently underwent a partial right nephrectomy.

46.     Plaintiff John Davies is a citizen and resident of Murrieta, California. From approximately 1997 to 2025, Plaintiff John Davies was regularly exposed to PFAS through drinking water at residences and workplaces in San Diego, California; Mission Viejo, California; and Irvine, California.

47.     On or about August 13, 2013, Plaintiff John Davies was diagnosed with testicular cancer in San Diego, California and subsequently underwent a left orchiectomy.

48.     Plaintiff Kevin De Mata is a citizen and resident of Compton, California. From approximately 2008 to 2023, Plaintiff Kevin De Mata was regularly exposed to PFAS through drinking water at his residence in Los Angeles, California.

49.     On or about September 21, 2019, Plaintiff Kevin De Mata was diagnosed with testicular cancer in Long Beach, California and subsequently underwent a left orchiectomy.

50.     Plaintiff Joseph Deakin is a citizen and resident of Livermore, California. From approximately 1972 to 2025, Plaintiff Joseph Deakin was regularly exposed to PFAS through drinking water at residences in Livermore, California.

51.     On or about January 27, 2021, Plaintiff Joseph Deakin was diagnosed with kidney cancer in Antioch, California and subsequently underwent a partial right nephrectomy.

52.     Plaintiff Matthew Deane is a citizen and resident of Loomis, California. From approximately 1980 to 2010, Plaintiff Matthew Deane was regularly exposed to PFAS through drinking water at residences in Sacramento, California and San Jose, California.

53.     On or about December 29, 2021, Plaintiff Matthew Deane was diagnosed with kidney cancer in Roseville, California and subsequently underwent a radical right nephrectomy.

54.     Plaintiff Dustin Eggleston is a citizen and resident of Yuba City, California. From approximately 1996 to 2001, Plaintiff Dustin Eggleston was regularly exposed to PFAS through drinking water at residences in Marysville, California.

55.     On or about August 15, 2008, Plaintiff Dustin Eggleston was diagnosed with testicular cancer in Sacramento, California and subsequently underwent a right orchiectomy.

56.     Plaintiff Debbie Elmore is a citizen and resident of Dayton, Ohio. From approximately 1975 to 2006, Plaintiff Debbie Elmore was regularly exposed to PFAS through drinking water at residences in South Gate, California; La Mirada, California; Buena Park, California; and Fullerton, California.

57.     On or about November 16, 2016, Plaintiff Debbie Elmore was diagnosed with kidney cancer in Redlands, California and subsequently underwent a radical left nephrectomy.

58.     Plaintiff Linda Fillio is a citizen and resident of Somerset, California. From approximately 1973 to 2014, Plaintiff Linda Fillio was regularly exposed to PFAS through drinking water at residences in San Jose, California; Atascadero, California; and Fremont, California.

59.     On or about December 17, 2018, Plaintiff Linda Fillio was diagnosed with kidney cancer in Roseville, California and subsequently underwent a partial right nephrectomy.

60.     Plaintiff Terri Fittro is a citizen and resident of Diamond Springs, California. From

**Exhibit A, Page 16**

1  approximately 1992 to 1994, Plaintiff Terri Fittro was regularly exposed to PFAS through drinking

2  water at residences in Alamogordo, New Mexico.

3      61.    On or about December 23, 2021, Plaintiff Terri Fittro was diagnosed with kidney

4  cancer in Placerville, California and subsequently underwent a radical left nephrectomy.

5      62.    Plaintiff Anthony Frank is a citizen and resident of Rowlett, Texas. From

6  approximately 2003 to 2015, Plaintiff Anthony Frank was regularly exposed to PFAS through

7  drinking water at residences and workplaces in Anaheim, California; Corona, California;

8  Riverside, California; Sugar Land, Texas; and Edison, New Jersey.

9      63.    On or about May 17, 2010, Plaintiff Anthony Frank was diagnosed with testicular

10 cancer in Houston, Texas and subsequently underwent a right orchiectomy.

11     64.    Plaintiff Rhesa French is a citizen and resident of Summit City, California. From

12 approximately 1979 to 2025, Plaintiff Rhesa French was regularly exposed to PFAS through

13 drinking water at residences in Redding, California; Shasta Lake, California; and Anderson,

14 California.

15     65.    On or about January 22, 2016, Plaintiff Rhesa French was diagnosed with kidney

16 cancer in Redding, California and subsequently underwent a right nephrectomy.

17     66.    Plaintiff Lynette Gamez is a citizen and resident of Bakersfield, California. From

18 approximately 1970 to 2025, Plaintiff Lynette Gamez was regularly exposed to PFAS through

19 drinking water at residences in Fresno, California and Bakersfield, California.

20     67.    On or about November 2010, Plaintiff Lynette Gamez was diagnosed with kidney

21 cancer in Bakersfield, California and subsequently underwent a right nephrectomy.

22     68.    Plaintiff Pearl Garcia is a citizen and resident of Moreno Valley, California. From

23 approximately 2004 to 2025, Plaintiff Pearl Garcia was regularly exposed to PFAS through

24 drinking water at residences in Moreno Valley, California and Riverside, California.

25     69.    On or about 2014, Plaintiff Pearl Garcia was diagnosed with kidney cancer in Loma

26 Linda, California and subsequently underwent a right nephrectomy.

27     70.    Plaintiff Serena Garcia is a citizen and resident of Anchorage, Alaska. From

28 approximately 1998 to 2025, Plaintiff Serena Garcia was regularly exposed to PFAS through

1    drinking water at residences in Fairbanks, Alaska; Anchorage, Alaska; and San Jose, California.

2    71.    On or about October 2024, Plaintiff Serena Garcia was diagnosed with kidney

3    cancer in Anchorage, Alaska and subsequently underwent a radical left nephrectomy.

4    72.    Plaintiff Jack Gentry is a citizen and resident of Pleasanton, California. From

5    approximately 1989 to 2025, Plaintiff Jack Gentry was regularly exposed to PFAS through

6    drinking water at residences in Pleasanton, California; Castro Valley, California; and Union City,

7    California.

8    73.    On or about 2007, Plaintiff Jack Gentry was diagnosed with testicular cancer in

9    Hayward, California and subsequently underwent a right orchiectomy.

10    74.    Plaintiff Michael Gilmore is a citizen and resident of Rattan, Oklahoma. From

11    approximately 1984 to 2000, Plaintiff Michael Gilmore was regularly exposed to PFAS through

12    drinking water at residences in Anaheim, California and Corona, California.

13    75.    On or about October 7, 2020, Plaintiff Michael Gilmore was diagnosed with kidney

14    cancer in Oklahoma City, Oklahoma and subsequently underwent a partial left nephrectomy.

15    76.    Plaintiff Peggi Gioletti is a citizen and resident of San Jose, California. From

16    approximately 1992 to 2025, Plaintiff Peggi Gioletti was regularly exposed to PFAS through

17    drinking water at residences in Atwater, California; Merced, California; Modesto, California;

18    Ceres, California; and San Jose, California.

19    77.    On or about October 19, 2015, Plaintiff Peggi Gioletti was diagnosed with kidney

20    cancer in San Jose, California and subsequently underwent a radical right nephrectomy.

21    78.    Plaintiff Cynthia Glasgow is a citizen and resident of Goodyear, Arizona. From

22    approximately 1970 to 2021, Plaintiff Cynthia Glasgow was regularly exposed to PFAS through

23    drinking water at her residence in Stockton, California.

24    79.    On or about October 3, 2016, Plaintiff Cynthia Glasgow was diagnosed with kidney

25    cancer in Sacramento, California and subsequently underwent a partial right nephrectomy.

26    80.    Plaintiff Manuel Gonzales is a citizen and resident of Oklahoma City, Oklahoma.

27    From approximately 1994 to 2016, Plaintiff Manuel Gonzales was regularly exposed to PFAS

28    through drinking water at residences in Los Angeles, California; Pico Rivera, California; and

1   Whittier, California.

2       81.    On or about November 22, 2023, Plaintiff Manuel Gonzales was diagnosed with

3   kidney cancer in Oklahoma City, Oklahoma and subsequently underwent immunotherapy

4   treatment.

5       82.    Plaintiff Julio Grapa is a citizen and resident of Saratoga, California. From

6   approximately 1992 to 2021, Plaintiff Julio Grapa was regularly exposed to PFAS through

7   drinking water at residences in Santa Barbara, California; Goleta, California; Cincinnati, Ohio;

8   and Sacramento, California.

9       83.    On or about November 7, 2019, Plaintiff Julio Grapa was diagnosed with kidney

10  cancer in Cincinnati, Ohio and subsequently underwent a partial right nephrectomy.

11      84.    Plaintiff Frederick Hajduk is a citizen and resident of Sequim, Washington. From

12  approximately 2009 to 2010, Plaintiff Frederick Hajduk was regularly exposed to PFAS through

13  drinking water at his residence in Glendale, California.

14      85.    On or about April 14, 2010, Plaintiff Frederick Hajduk was diagnosed with kidney

15  cancer in Glendale, California and subsequently underwent a partial left nephrectomy.

16      86.    Plaintiff Michael Hardy is a citizen and resident of Costa Mesa, California. From

17  approximately 1990 to 2018, Plaintiff Michael Hardy was regularly exposed to PFAS through

18  drinking water at residences in Santa Ana, California; Irvine, California; and Newport Beach,

19  California.

20      87.    On or about November 24, 2004, Plaintiff Michael Hardy was diagnosed with

21  testicular cancer in Orange City, California and subsequently underwent a right orchiectomy.

22      88.    Plaintiff Martin Heimerdinger is a citizen and resident of Clovis, California. From

23  approximately 1971 to 2025, Plaintiff Martin Heimerdinger was regularly exposed to PFAS

24  through drinking water at residences in Castro Valley, California; Los Angeles, California; and

25  Clovis, California.

26      89.    On or about December 2, 2015, Plaintiff Martin Heimerdinger was diagnosed with

27  kidney cancer in Fresno, California and subsequently underwent a radical left nephrectomy.

28      90.    Plaintiff Eliazar Hernandez is a citizen and resident of Irving, Texas. From

1  approximately 1997 to 2021, Plaintiff Eliazar Hernandez was regularly exposed to PFAS through

2  drinking water at his residence in Fresno, California.

3       91.    On or about December 14, 2011, Plaintiff Eliazar Hernandez was diagnosed with

4  testicular cancer in Fresno, California and subsequently underwent a right orchiectomy.

5       92.    Plaintiff Theresa Herring Tyler is a citizen and resident of Fresno, California. From

6  approximately 1987 to 2025, Plaintiff Theresa Herring Tyler was regularly exposed to PFAS

7  through drinking water at her residence in Fresno, California.

8       93.    On or about July 2002, Plaintiff Theresa Herring Tyler was diagnosed with kidney

9  cancer in Fresno, California and subsequently underwent a radical right nephrectomy.

10       94.    Plaintiff Nicki Heyman is a citizen and resident of Alamo, California. From

11  approximately 1995 to 2025, Plaintiff Nicki Heyman was regularly exposed to PFAS through

12  drinking water at residences in Walnut Creek, California; Lafeyette, California; Pleasanton,

13  California; Danville, California; and Alamo, California.

14       95.    On or about December 27, 2022, Plaintiff Nicki Heyman was diagnosed with

15  kidney cancer in Walnut Creek, California and subsequently underwent a partial right

16  nephrectomy.

17       96.    Plaintiff Bucky Hogue is a citizen and resident of San Jose, California. From

18  approximately 2004 to 2018, Plaintiff Bucky Hogue was regularly exposed to PFAS through

19  drinking water at residences in Corcoran, California and Santa Clara, California.

20       97.    On or about December 2005, Plaintiff Bucky Hogue was diagnosed with testicular

21  cancer in Fresno, California and subsequently underwent a right orchiectomy.

22       98.    Plaintiff Barry Holtzer is a citizen and resident of Reno, Nevada. From

23  approximately 1970 to 2010, Plaintiff Barry Holtzer was regularly exposed to PFAS through

24  drinking water at residences and workplaces in Pacific Grove Military Base, California and San

25  Jose, California.

26       99.    On or about 2006, Plaintiff Barry Holtzer was diagnosed with kidney cancer in San

27  Jose, California and subsequently underwent a partial right nephrectomy.

28       100.    Plaintiff Daniel Irish is a citizen and resident of San Francisco, California. From

approximately 1983 to 2025, Plaintiff Daniel Irish was regularly exposed to PFAS through drinking water at residences in Redding, California; San Ramon, California; Berkley, California; Portland, Oregon; and San Francisco, California.

101.    On or about March 28, 2025, Plaintiff Daniel Irish was diagnosed with kidney cancer in San Francisco, California and subsequently underwent a partial nephrectomy.

102.    Plaintiff Elvis Jameson is a citizen and resident of Issaquah, Washington. From approximately 1978 to 2006, Plaintiff Elvis Jameson was regularly exposed to PFAS through drinking water at residences in San Diego, California.

103.    On or about February 20, 2012, Plaintiff Elvis Jameson was diagnosed with testicular cancer in Medford, Oregon and subsequently underwent a left orchiectomy.

104.    Plaintiff Johnathan Jimenez is a citizen and resident of Santa Ana, California. From approximately 1986 to 2025, Plaintiff Johnathan Jimenez was regularly exposed to PFAS through drinking water at his residence in Santa Ana, California.

105.    On or about June 30, 2009, Plaintiff Johnathan Jimenez was diagnosed with testicular cancer in Anaheim, California and subsequently underwent a left orchiectomy.

106.    Plaintiff Mignon Kelly is a citizen and resident of Fulton, Missouri. From approximately 1970 to 2023, Plaintiff Mignon Kelly was regularly exposed to PFAS through drinking water at residences in Los Angeles, California; Sacramento, California; Lynwood, California; Pomona, California; and Norwalk, California.

107.    On or about July 2, 2024, Plaintiff Mignon Kelly was diagnosed with kidney cancer in Pomona, California and subsequently underwent a partial left nephrectomy.

108.    Plaintiff Douglas Kemmis is a citizen and resident of Los Molinos, California. From approximately 1997 to 2009, Plaintiff Douglas Kemmis was regularly exposed to PFAS through drinking water at residences in Orlando, Florida; North Highlands, California; Rancho Cordova, California; and Sacramento, California.

109.    On or about 2011, Plaintiff Douglas Kemmis was diagnosed with testicular cancer in Roseville, California and subsequently underwent a right orchiectomy.

110.    Plaintiff Ricky Lee is a citizen and resident of Azusa, California. From

1   approximately 1994 to 2016, Plaintiff Ricky Lee was regularly exposed to PFAS through drinking

2   water at residences in Winter Park, Florida; Phoenix, Arizona; and Kearney, New Jersey.

3       111.    On or about August 16, 2016, Plaintiff Ricky Lee was diagnosed with kidney

4   cancer in Montebello, California and subsequently underwent a left orchiectomy.

5       112.    Plaintiff Matthew Leighton is a citizen and resident of Laguna Hills, California.

6   From approximately 1978 to 2016, Plaintiff Matthew Leighton was regularly exposed to PFAS

7   through drinking water at residences in Laguna, California; Chino Hills, California; and Buena

8   Park, California.

9       113.    On or about April 2021, Plaintiff Matthew Leighton was diagnosed with kidney

10  cancer in Anaheim, California and subsequently underwent a radical left nephrectomy.

11      114.    Plaintiff Jason Loring is a citizen and resident of Watsonville, California. From

12  approximately 1993 to 2009, Plaintiff Jason Loring was regularly exposed to PFAS through

13  drinking water at residences in Redding, California; Elk Grove, California; and Anderson,

14  California.

15      115.    On or about November 12, 2008, Plaintiff Jason Loring was diagnosed with kidney

16  cancer in Sacramento, California and subsequently underwent a nephrectomy.

17      116.    Plaintiff Kimberley Meyers-Baldwin is a citizen and resident of Los Angeles,

18  California. From approximately 1998 to 2025, Plaintiff Kimberley Meyers-Baldwin was regularly

19  exposed to PFAS through drinking water at residences in Los Angeles, California and Compton,

20  California.

21      117.    On or about May 26, 2023, Plaintiff Kimberley Meyers-Baldwin was diagnosed

22  with kidney cancer in Los Angeles, California and subsequently underwent a radical left

23  nephrectomy.

24      118.    Plaintiff Ashley Mickel is a citizen and resident of Citrus Heights, California. From

25  approximately 2015 to 2016, Plaintiff Ashley Mickel was regularly exposed to PFAS through

26  drinking water at residences in Sacramento, California.

27      119.    On or about August 23, 2019, Plaintiff Ashley Mickel was diagnosed with testicular

28  cancer in Vacaville, California and subsequently underwent a left orchiectomy.

**Exhibit A, Page 22**

120.    Plaintiff Steven Montoya is a citizen and resident of Westminster, California. From approximately 1985 to 2017, Plaintiff Steven Montoya was regularly exposed to PFAS through drinking water at residences in Buena Park, California; Cypress, California; Westminster, California; Hawaiian Gardens, California; and Lakewood, California.

121.    On or about June 28, 2016, Plaintiff Steven Montoya was diagnosed with kidney cancer in Los Alamitos, California and subsequently underwent a radical left nephrectomy.

122.    Plaintiff Raymond Otero is a citizen and resident of Grass Valley, California. From approximately 1977 to 1995 Plaintiff Raymond Otero was regularly exposed to PFAS through drinking water at residences in Lynwood, California; Irvine, California; and Westminster, California.

123.    On or about June 3, 2016, Plaintiff Raymond Otero was diagnosed with kidney cancer in Sacramento, California and subsequently underwent a partial right nephrectomy.

124.    Plaintiff Joseph Pangelinan is a citizen and resident of San Antonio, Texas. From approximately 1980 to 1999, Plaintiff Joseph Pangelinan was regularly exposed to PFAS through drinking water at residences and military bases in San Deigo, California; Somersworth, New Hampshire; and Oceanside, California.

125.    On or about January 2025, Plaintiff Joseph Pangelinan was diagnosed with kidney cancer in San Antonio, Texas and subsequently underwent a radical left nephrectomy.

126.    Plaintiff Maurice Perez is a citizen and resident of Hayward, California. From approximately 1972 to 2025, Plaintiff Maurice Perez was regularly exposed to PFAS through drinking water at residences and military bases in San Diego, California; Oceanside, California; and Hayward, California.

127.    On or about February 2025, Plaintiff Maurice Perez was diagnosed with kidney cancer in Hayward, California and subsequently underwent related treatment.

128.    Plaintiff Michael Pisciotta is a citizen and resident of Los Angeles, California. From approximately 2005 to 2022, Plaintiff Michael Pisciotta was regularly exposed to PFAS through drinking water at residences in Los Angeles, California and Pueblo, Colorado.

129.    On or about 2019, Plaintiff Michael Pisciotta was diagnosed with kidney cancer in

1    Los Angeles, California and subsequently underwent a partial left nephrectomy.

2        130.    Plaintiff Steve Pope, Jr. is a citizen and resident of Upland, California. From

3    approximately 1996 to 2025, Plaintiff Steve Pope, Jr. was regularly exposed to PFAS through

4    drinking water at residences and workplaces in La Puente, California; Baldwin Park, California;

5    Hesperia, California; City of Industry, California; and Ontario, California.

6        131.    On or about November 30, 2016, Plaintiff Steve Pope, Jr. was diagnosed with

7    testicular cancer in Fontana, California and subsequently underwent a left orchiectomy.

8        132.    Plaintiff Alfonso Porchas is a citizen and resident of Somerton, Arizona. From

9    approximately 1995 to 2008, Plaintiff Alfonso Porchas was regularly exposed to PFAS through

10   drinking water at residences and military bases in San Diego, California and Yuma, Arizona.

11       133.    On or about April 23, 2025, Plaintiff Alfonso Porchas was diagnosed with kidney

12   cancer in Phoenix, Arizona and subsequently underwent a radical right nephrectomy.

13       134.    Plaintiff Patricia Porras is a citizen and resident of San Antonio, Texas. From

14   approximately 1989 to 2005, Plaintiff Patricia Porras was regularly exposed to PFAS through

15   drinking water at residences in Westminster, California; Stanton, California; Anaheim, California;

16   and Cypress, California.

17       135.    On or about June 28, 2023, Plaintiff Patricia Porras was diagnosed with kidney

18   cancer in Kerrville, Texas and subsequently underwent a radical right nephrectomy.

19       136.    Plaintiff Martin Ramirez is a citizen and resident of South Gate, California. From

20   approximately 1980 to 2025, Plaintiff Martin Ramirez was regularly exposed to PFAS through

21   drinking water at residences in South Gate, California; Rialto, California; Anaheim, California;

22   Huntington Park, California; and San Bernardino, California.

23       137.    On or about 2010, Plaintiff Martin Ramirez was diagnosed with testicular cancer

24   in Lynwood, California and subsequently underwent a right orchiectomy.

25       138.    Plaintiff Danielle Robert is a citizen and resident of Village of Lakewood, Illinois.

26   From approximately 1994 to 2019, Plaintiff Danielle Robert was regularly exposed to PFAS

27   through drinking water at residences and military bases in Oceanside, California; Crystal Lake,

28   Illinois; Lake in the Hills, Illinois; and San Diego, California.

**Exhibit A, Page 24**

1    139.    On or about May 12, 2015, Plaintiff Danielle Robert was diagnosed with kidney
2    cancer in Chicago, Illinois and subsequently underwent a partial left nephrectomy.

3    140.    Plaintiff Dyan Robles is a citizen and resident of Corona, California. From
4    approximately 1968 to 2025, Plaintiff Dyan Robles was regularly exposed to PFAS through
5    drinking water at residences in Garden Grove, California and Corona, California.

6    141.    On or about September 29, 2015, Plaintiff Dyan Robles was diagnosed with kidney
7    cancer in Loma Linda, California and subsequently underwent a partial right nephrectomy.

8    142.    Plaintiff Robin Rose is a citizen and resident of Indianapolis, Indiana. From
9    approximately 1972 to 1989, Plaintiff Robin Rose was regularly exposed to PFAS through
10    drinking water at residences and military bases in San Diego, California and Yuma, Arizona.

11    143.    On or about 2013, Plaintiff Robin Rose was diagnosed with kidney cancer in
12    Indianapolis, Indiana and subsequently underwent a partial right nephrectomy.

13    144.    Plaintiff Edward Sequeira is a citizen and resident of Elk Grove, California. From
14    approximately 1967 to 2025, Plaintiff Edward Sequeira was regularly exposed to PFAS through
15    drinking water at residences in Sacramento, California and Elk Grove, California.

16    145.    On or about January 26, 2015, Plaintiff Edward Sequeira was diagnosed with
17    kidney cancer in Sacramento, California and subsequently underwent a radical left nephrectomy.

18    146.    Plaintiff Robert Shaw is a citizen and resident of Los Angeles, California. From
19    approximately 1972 to 2025, Plaintiff Robert Shaw was regularly exposed to PFAS through
20    drinking water at residences in Fort Worth, Texas and Los Angeles, California.

21    147.    On or about June 22, 2020, Plaintiff Robert Shaw was diagnosed with kidney
22    cancer in Los Angeles, California and subsequently underwent a partial right nephrectomy.

23    148.    Plaintiff Lee Sheldon is a citizen and resident of Riverside, California. From
24    approximately 1999 to 2025, Plaintiff Lee Sheldon was regularly exposed to PFAS through
25    drinking water at residences in Ontario, California and Riverside, California.

26    149.    On or about August 17, 2018, Plaintiff Lee Sheldon was diagnosed with kidney
27    cancer in Loma Linda, California and subsequently underwent a radical right nephrectomy.

28    150.    Plaintiff William Simmons is a citizen and resident of Gorman, California. From

1    approximately 1988 to 2024, Plaintiff William Simmons was regularly exposed to PFAS through
2    drinking water at residences in Perris, California; Bell Gardens, California; and Klamath Falls,
3    Oregon.

4        151.    On or about July 12, 2013, Plaintiff William Simmons was diagnosed with kidney
5    cancer in Portland, Oregon and subsequently underwent a partial left nephrectomy.

6        152.    Plaintiff Susan Simmons is a citizen and resident of Grass Valley, California. From
7    approximately 1995 to 2005, Plaintiff Susan Simmons was regularly exposed to PFAS through
8    drinking water at residences in Martinez, California and Oroville, California.

9        153.    On or about December 10, 2024, Plaintiff Susan Simmons was diagnosed with
10   kidney cancer in Grass Valley, California and subsequently underwent chemotherapy treatment.

11       154.    Plaintiff Frederick Sinfield is a citizen and resident of Redwood City, California.
12   From approximately 1977 to 2025, Plaintiff Frederick Sinfield was regularly exposed to PFAS
13   through drinking water at residences, workplaces, and military bases in Redwood City, California;
14   San Jose, California; and Vandenberg Space Force Base, California.

15       155.    On or about March 2025, Plaintiff Frederick Sinfield was diagnosed with kidney
16   cancer in San Francisco, California and subsequently underwent a left nephrectomy.

17       156.    Plaintiff Terry Spangler is a citizen and resident of Spring Valley, California. From
18   approximately 1970 to 2001, Plaintiff Terry Spangler was regularly exposed to PFAS through
19   drinking water at his residence in San Diego, California.

20       157.    On or about December 8, 2020, Plaintiff Terry Spangler was diagnosed with kidney
21   cancer in San Diego, California and subsequently underwent a radical right nephrectomy.

22       158.    Plaintiff Linda Spellacy-Scott is a citizen and resident of Brentwood, California.
23   From approximately 1978 to 2009, Plaintiff Linda Spellacy-Scott was regularly exposed to PFAS
24   through drinking water at residences in San Pablo, California; Dublin, California; Pleasanton,
25   California; and Pinole, California.

26       159.    On or about February 2020, Plaintiff Linda Spellacy-Scott was diagnosed with
27   kidney cancer in Antioch, California and subsequently underwent a partial left nephrectomy.

28       160.    Plaintiff Somer Studebaker is a citizen and resident of Clayton, California. From

**Exhibit A, Page 26**

1    approximately 2000 to 2008, Plaintiff Somer Studebaker was regularly exposed to PFAS through

2    drinking water at residences in Spokane, Washington.

3        161.    On or about June 18, 2021, Plaintiff Somer Studebaker was diagnosed with kidney

4    cancer in San Francisco, California and subsequently underwent a partial right nephrectomy.

5        162.    Plaintiff Rexx Thomas is a citizen and resident of Redlands, California. From

6    approximately 2009 to 2019, Plaintiff Rexx Thomas was regularly exposed to PFAS through

7    drinking water at residences in Crestline, California and Riverside, California.

8        163.    On or about November 9, 2016, Plaintiff Rexx Thomas was diagnosed with

9    testicular cancer in Moreno Valley, California and subsequently underwent a right orchiectomy.

10        164.    Plaintiff Louis Tousignant is a citizen and resident of Ishpeming, Michigan. From

11    approximately 1990 to 1995, Plaintiff Louis Tousignant was regularly exposed to PFAS through

12    drinking water at his residence in Anaheim, California.

13        165.    On or about October 15, 2019, Plaintiff Louis Tousignant was diagnosed with

14    kidney cancer in Madison, Wisconsin and subsequently underwent a radical right nephrectomy.

15        166.    Plaintiff Matthew Tuisee is a citizen and resident of Oceanside, California. From

16    approximately 1971 to 2025, Plaintiff Matthew Tuisee was regularly exposed to PFAS through

17    drinking water at residences in Oceanside, California and Sun City, California.

18        167.    On or about February 2006, Plaintiff Matthew Tuisee was diagnosed with testicular

19    cancer in San Diego, California and subsequently underwent chemotherapy treatment.

20        168.    Plaintiff Timothy Turbeville is a citizen and resident of San Diego, California.

21    From approximately 1978 to 2025, Plaintiff Timothy Turbeville was regularly exposed to PFAS

22    through drinking water at residences in Santa Ana, California and San Diego, California.

23        169.    On or about November 2019, Plaintiff Timothy Turbeville was diagnosed with

24    clear cell renal carcinoma in San Diego, California and subsequently underwent a radical left

25    nephrectomy.

26        170.    Plaintiff Danny Velez is a citizen and resident of Fresno, California. From

27    approximately 1988 to 2024, Plaintiff Danny Velez was regularly exposed to PFAS through

28    drinking water at residences in Oxnard, California and Fresno, California.

**Exhibit A, Page 27**

171.    On or about March 2010, Plaintiff Danny Velez was diagnosed with kidney cancer in Fresno, California and subsequently underwent a radical left nephrectomy.

172.    Plaintiff Bobby Webster is a citizen and resident of Lakewood, California. From approximately 1980 to 1995, Plaintiff Bobby Webster was regularly exposed to PFAS through drinking water at residences in Buena Park, California and La Mirada, California.

173.    On or about June 24, 2010, Plaintiff Bobby Webster was diagnosed with kidney cancer in Lakewood, California and subsequently underwent a right nephrectomy.

174.    Plaintiff Skylar Wendel is a citizen and resident of Groveland, California. From approximately 1985 to 1998, Plaintiff Skylar Wendel was regularly exposed to PFAS through drinking water at residences in Riverside, California.

175.    On or about June 10, 2024, Plaintiff Skylar Wendel was diagnosed with kidney cancer in Sonora, California and subsequently underwent a partial left nephrectomy.

176.    Plaintiff Anthony Whiteside is a citizen and resident of Los Angeles, California. From approximately 1985 to 2025, Plaintiff Anthony Whiteside was regularly exposed to PFAS through drinking water at residences in San Fernando, California; Los Angeles, California; Lancaster, California; Sylmar, California; and Altadena, California.

177.    On or about 2009, Plaintiff Anthony Whiteside was diagnosed with kidney cancer in Los Angeles, California and subsequently underwent a radical right nephrectomy.

178.    Plaintiff Jihoon Won is a citizen and resident of Irvine, California. From approximately 1997 to 2025, Plaintiff Jihoon Won was regularly exposed to PFAS through drinking water at residences in San Diego, California and Irvine, California.

179.    On or about September 16, 2021, Plaintiff Jihoon Won was diagnosed with kidney cancer in Newport Beach, California and subsequently underwent a radical left nephrectomy.

180.    Plaintiff Ann Worsham is a citizen and resident of Vacaville, California. From approximately 1979 to 2025, Plaintiff Ann Worsham was regularly exposed to PFAS through drinking water at residences in Klamath Falls, Oregon; Martinez, California; and Vacaville, California.

181.    On or about December 2011, Plaintiff Ann Worsham was diagnosed with clear cell

1   renal carcinoma, in Vacaville, California and subsequently underwent a radical left nephrectomy.

2        182.    Plaintiff Ryan Yahiro is a citizen and resident of San Diego, California. From

3   approximately 2005 to 2025, Plaintiff Ryan Yahiro was regularly exposed to PFAS through

4   drinking water at residences and schools in San Diego, California and Los Angeles, California.

5        183.    On or about February 12, 2021, Plaintiff Ryan Yahiro was diagnosed with kidney

6   cancer in San Diego, California and subsequently underwent a partial right nephrectomy.

7   **B.**  **Defendants**

8        184.    Upon information and belief, the following Defendants designed, manufactured,

9   formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which

10   Plaintiffs were exposed.

11        185.   **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing

12   Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware

13   with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times

14   relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA

15   and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout

16   the country.

17        186.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

18        187.   **AGC AMERICA:** Defendant AGC Chemicals Americas, Inc. ("AGC America")

19   is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201,

20   Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC,

21   Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

22        188.   **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation

23   organized under the laws of Japan and does business throughout the United States. AGC has its

24   principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

25        189.   **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a

26   Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10,

27   Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary

28   of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

190.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

191.    **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

192.    **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

193.    **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

194.    **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

195.    **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

196.    **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

197.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

198.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its

1   agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all

2   issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way

3   of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became

4   the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

5       199.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc.,

6   DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon

7   information and belief, New DuPont retained assets in the specialty products business lines, as

8   well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

9       200.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with

10  its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523.

11  Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in

12  AFFF.

13      201.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a

14  corporation organized and existing under the laws of the State of Delaware with its principal place

15  of business located at 974 Centre Road, Wilmington, Delaware 19805.

16      202.    **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation

17  organized and existing under the laws of the State of Delaware, with its principal place of business

18  located at 1007 Market Street, Wilmington, Delaware 19899.

19      203.    In 2015, DuPont spun off its "Performance Chemicals" business to Chemours,

20  along with certain environmental liabilities. Upon information and belief, at the time of the transfer

21  of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit

22  and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for

23  damages and injuries arising from the manufacture and sale of PFAS compounds and products that

24  contain PFAS compounds.

25      204.    **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours

26  FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability

27  company that conducts business throughout the United States. Its principal place of business is

28  1007 Market Street Wilmington, Delaware, 19899.

205.   **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

206.   Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

207.   Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

208.   Upon information and belief, Defendant John Does 1-49 were manufacturers and/or sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

209.   All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of California.

210.   Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

211.   The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.   JURISDICTION & VENUE

212.   This Court has jurisdiction pursuant to Cal. Const. art. VI, § 10.

213.   This Court may exercise personal jurisdiction over Defendants because, based on information and belief, each is a corporation or other business that has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market either through the distribution or sale of products containing PFAS in the State of California or by having a manufacturing, distribution or other facility located in California so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

214.   Venue is appropriate in Los Angeles County pursuant to Cal. Code Civ. Proc. §395 as facts and circumstances giving rise to the cause of action and Plaintiffs' injury occurred in this County.

### IV.   FACTUAL ALLEGATIONS

**A.   The PFAS Contaminants at Issue: PFOA and PFOS**

215.   Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

216.   PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

217.   PFOA and PFOS are stable, man-made chemicals. They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

218.   Both PFOA and PFOS are readily absorbed in animal and human tissues after oral

**Exhibit A, Page 33**

1  exposure and accumulate in the serum, kidney, and liver. They have been found globally in water,

2  soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood

3  serum.[1]

4      219.    Moreover, PFOA and PFOS are persistent in the human body and resistant to

5  metabolic degradation. A short-term exposure can result in a body burden that persists for years

6  and can increase with additional exposures.[2]

7      220.    Notably, from the time these two compounds were first produced, information has

8  emerged showing negative health effects caused by exposure to PFOA and PFOS. According to

9  EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced

10  hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

11     221.    The EPA has warned that there is suggestive evidence of the carcinogenic potential

12  for PFOA and PFOS in humans.[4]

13     222.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over

14  400 studies published since 2016 and applying human health risk assessment approaches, tools,

15  and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS

16  exposure at which negative outcomes could occur are much lower than previously understood

17  when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA

18  therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02

19  ppt for PFOS.[5]

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perflurooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at  https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).

[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at

---

**Exhibit A, Page 34**

223.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.   The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B.  Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

224.    Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

225.    Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

226.    The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

227.    When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).  When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA

---

https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

1  and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is

2  used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF

3  was used. This has resulted in widespread contamination of drinking water supplies with PFOA

4  and PFOS nationwide.

5       228.    Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with

6  PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

7       229.    Despite having knowledge of this fact—as well as having knowledge regarding the

8  toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture,

9  distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs'

10  injuries.

11  **C.  <u>Defendants' Knowledge of PFOA and PFOS Hazards</u>**

12       230.    On information and belief, by the 1970s, Defendants knew, or reasonably should

13  have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used

14  per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface,

15  mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-

16  potable, and can be removed from public drinking water supplies only at substantial expense.

17       231.    At all times pertinent herein, Defendants also knew or should have known that

18  PFOA and PFOS present a risk to human health and could be absorbed into the lungs and

19  gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous

20  system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that

21  cause genetic damage.

22       232.    For instance, in 1980, 3M published data in peer reviewed literature showing that

23  humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take

24  a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all

25  exposures had ceased.[7]

26

27  _____

28  [7] *See* Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.*  Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

233.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

234.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

235.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

236.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

237.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

238.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the

---

[8] *See* DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed March 11, 2025).

[9] *See* 3M, Internal Memorandum, *Organic Fluorine Levels,* (August 31, 1984), Office of Minnesota Attorney General, Exhibit List, No. 1313, available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed March 11, 2025).

1    environment and harmed Plaintiffs.

2    239.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s

3    and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose

4    to the public or to government regulators what they knew about the substance's potential effects

5    on humans, animals, or the environment.[10]

6    240.    By December 2005, the EPA uncovered evidence that DuPont concealed the

7    environmental and health effects of PFOA, and the EPA announced the "Largest Environmental

8    Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the

9    Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA

10    substantial risk information about chemicals they manufacture, process or distribute in

11    commerce."[11]

12    241.    By July 2011, DuPont could no longer credibly dispute the human toxicity of

13    PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the

14    settlement of a class action over DuPont's releases from the Washington Works plant had reviewed

15    the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA

16    exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and

17    preeclampsia.[13]  By October 2012, the C8 Science Panel had notified DuPont of a probable link

18    between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease,

19    testicular cancer, and ulcerative colitis.

20    242.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a

21

22    ───────────────
    [10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at

23    https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

24    [11] *Id.*

25    [12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

26

27    [13]  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at

28    http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last accessed March 11, 2025).

Exhibit A, Page 38

1  new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped

2  its perfluorinated chemical liabilities into the lap of the new Chemours.

3      243.    Defendants also knew or should have known that: (a) users of AFFF would likely

4  include fire and rescue training organizations and their personnel; (b) fire and rescue personnel

5  were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training

6  and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when

7  used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of

8  these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or

9  affirmative instructions in the use of AFFF.

10      244.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

11  designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued

12  instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the

13  users of AFFF of the dangers to human health that result from the standard use and disposal of

14  these products; negligently designed products containing or degrading into PFOA and/or PFOS;

15  and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of

16  AFFF containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity

17  of the purchasers of the PFOA/PFOS.

18      245.    Further, Defendants failed to disclose to environmental regulators and the general

19  public the likely existence of and health risks to the public caused by widespread PFOA and PFOS

20  contamination in drinking water supplies across the country as a result of AFFF usage.

21      246.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered

22  severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and

23  proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

24      247.    Defendants had a duty and breached their duty to evaluate and test such products

25  adequately and thoroughly to determine their potential human health impacts before they sold such

26  products. They also had a duty and breached their duty to minimize the risk of harm to human

27  health caused by PFOA and PFOS.

28

**D.  The Impact of PFOA and PFOS on the Plaintiffs**

248.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

249.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

250.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

251.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

252.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

  a.    Plaintiffs suffered physical pain and mental anguish;

  b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

  c.    Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognosis.

## FIRST CAUSE OF ACTION

## STRICT LIABILITY – DESIGN DEFECT – CONSUMER EXPECTATION TEST

253.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

254.    Plaintiffs were harmed by Fluorosurfactant Products which were designed, manufactured, marketed, sold and/or distributed by Defendants, and which were defectively designed, did not include sufficient instructions, and did not include sufficient warning of potential safety hazards of human exposure.

255.    Defendants' Fluorosurfactant Products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

256.    Defendants represented, asserted, claimed and/or warranted that their Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

**Exhibit A, Page 40**

257.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to manufacture, sell, or market any product which is unreasonably dangerous for its intended and foreseeable uses.

258.    Defendants' Fluorosurfactant Products were used by or near Plaintiffs in a reasonably foreseeable manner and without substantial change in the condition in which the products were sold.

259.    Defendants knew, or should have known, that use of Defendants' Fluorosurfactant Products in their intended manner would result in exposure of humans to PFOA and/or PFOS and to resulting injury.

260.    Furthermore, Defendants knew, or should have known, that their Fluorosurfactant Products were toxic and associated with medical conditions in humans.

261.    Plaintiffs were, are and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

262.    Defendants' Fluorosurfactant Products' failure to perform safely was a substantial factor in causing Plaintiffs' harm.

263.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal injuries as discussed throughout this Complaint.

264.    Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users like Plaintiffs.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the Plaintiffs' health.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY – DESIGN DEFECT – RISK BENEFIT TEST

265.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

266.    Plaintiffs were harmed by Fluorosurfactant Products designed, manufactured,

1  marketed, sold and/or distributed by Defendants.

2      267.    Plaintiffs were, are, and will continue to be harmed by Defendants' defectively

3  designed Fluorosurfactant Products.

4      268.    The design of Defendants' Fluorosurfactant Products was a substantial factor in

5  causing harm to Plaintiffs.

6      269.    The gravity of the harm to Plaintiffs resulting from Defendants' Fluorosurfactant

7  Products outweighs the benefits of the Products' design.

8      270.    The likelihood that PFAS-containing products and/or AFFF would cause injuries

9  to Plaintiffs far outweighed any burden on Defendants to adopt an alternative design, and

10  outweighed the adverse effect, if any, of such alternative design on the utility of the product.

11      271.    At the time of manufacture, there were safer alternative designs that were feasible,

12  cost effective, and advantageous, including not using PFOS, PFOA and/or their precursor

13  chemicals in products.

14      272.    Defendants' conduct lacked any care and was an extreme departure from what a

15  reasonably careful company would do in the same situation to prevent harm to individuals, and

16  thus Defendants were grossly negligent.

17      273.    As a direct and proximate result of Defendants' unreasonably dangerous design,

18  manufacture, and sale of PFAS-containing products and/or AFFF, Plaintiffs suffered personal

19  injuries as discussed throughout this Complaint.

20      274.    Defendants knew that it was substantially certain that their acts and omissions

21  described above would threaten the health of users and the public, including Plaintiffs. Defendants

22  committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud,

23  oppression, or malice, and with conscious and/or reckless disregard for the health and safety of

24  others, and for the Plaintiffs' health.

25                    **THIRD CAUSE OF ACTION**

26              **STRICT LIABILITY – FAILURE TO WARN**

27      275.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

28      276.    PFAS-containing products and/or AFFF are unreasonably dangerous for their

---

1   reasonably anticipated uses such that a risk of harm is inherent for the following reasons:

2       a.      Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or

3               disposed of in its foreseeable and intended manner;

4       b.      PFOA and PFOS are likely to infiltrate the water supply when AFFF is used,

5               handled, or disposed of in its foreseeable and intended manner;

6       c.      PFOA and PFOS exposure may cause diseases and cancers like Plaintiffs;

7       d.      PFOA and/or PFOS persist and bioaccumulate in the human body; and

8       e.      PFOA and/or PFOS pose significant threats to human and environmental health.

9       277.    As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant

10  Products, Defendants had a duty to issue warnings to consumers, users, and foreseeable

11  bystanders, including Plaintiffs, of the risks posed by exposure to PFAS (including PFOA and

12  PFOS).

13      278.    Defendants knew that their Fluorosurfactant Products would be purchased,

14  transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to

15  human health.

16      279.    Defendants breached their duty to warn by unreasonably failing to provide

17  Plaintiffs, public officials, purchasers, downstream handlers, and/or the general public with

18  warnings about the potential and/or actual contamination of the environment by PFOA and PFOS,

19  despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the

20  environment.

21      280.    At all relevant times, including the time AFFF products were marketed, Defendants

22  knew of or should have reasonably foreseen the human health risks associated with PFAS-

23  containing products and/or AFFF, and Defendants failed to provide a warning that would lead an

24  ordinary reasonable user or handler of a product to contemplate the dangers associated with PFAS-

25  containing products and/or or an instruction that would have prevented the harm to Plaintiffs.

26      281.    Plaintiffs were exposed to PFAS-containing AFFF either directly or through their

27  drinking water supply.

28      282.    At the time and place of Plaintiffs' exposure, Defendants' Fluorosurfactant

1   Products were used in a reasonably foreseeable manner and without substantial changes in the

2   condition in which the products were sold.

3       283.    Although Defendants were aware of the dangers posed by AFFF and

4   Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

5       284.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

6   personal injuries and costs and damages resulting therefrom.

7       285.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

8       286.    Defendants knew that it was substantially certain that its acts and omissions

9   described above would threaten the health of users like Plaintiff.  Defendants committed each of

10  the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or

11  malice, and with conscious and/or reckless disregard for the health and safety of others and for the

12  Plaintiffs' health.

13                          **FOURTH CAUSE OF ACTION**

14              **NEGLIGENCE – MANUFACTURER OR SUPPLIER – DUTY TO WARN**

15      287.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

16      288.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers,

17  shippers, and/or handlers of Fluorosurfactant Products, Defendants owed a duty to Plaintiffs, as

18  well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to

19  exercise due care in the instructing, labeling, and warning of the handling, control, use, and

20  disposal of Defendants' Fluorosurfactant Products.

21      289.    Despite the fact that Defendants knew that PFOA and PFOS are toxic and present

22  significant risks to human health, Defendants negligently: (a) designed, manufactured, formulated,

23  handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant

24  Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed

25  of, thus improperly permitting Plaintiffs' exposure to PFOA and/or PFOS; (c) failed to warn the

26  users of Fluorosurfactant Products of the dangers of exposure inherent in the use of these products;

27  and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant

28  Products regarding the proper use and disposal of these products, notwithstanding the fact that

1   Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of

2   their Fluorosurfactant Products.

3       290.    A reasonable manufacturer, seller, or distributor, under the same or similar

4   circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant

5   Products.

6       291.    Plaintiffs were, are, and will continue to be harmed.

7       292.    Defendants' failure to warn or instruct was a substantial factor in causing Plaintiffs'

8   harm.

9       293.    Defendants' conduct lacked any care and was an extreme departure from what a

10  reasonably careful company would do in the same situation to prevent harm to others and the

11  environment, and thus Defendants were grossly negligent.

12      294.    Although Defendants were aware of the dangers posed by AFFF and

13  Fluorosurfactant Products, the dangers were unknown and not foreseeable to Plaintiffs.

14      295.    As a direct and proximate result of Defendants' failure to warn, Plaintiffs suffered

15  personal injuries and costs and damages resulting therefrom.

16      296.    The Defendants' failure to warn constitutes a causative nexus in Plaintiffs' injuries.

17      297.    Defendants knew that it was substantially certain that its acts and omissions

18  described above would threaten the health of users and bystanders, including Plaintiffs.

19  Defendants committed each of the above-described acts and omissions knowingly, willfully,

20  and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the

21  health and safety of others and for the Plaintiffs' health.

22  **FIFTH CAUSE OF ACTION**

23  **NEGLIGENCE – FAILURE TO RECALL**

24      298.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

25      299.    Defendants' Fluorosurfactant Products were designed, manufactured, marketed,

26  distributed and sold without adequate warning of toxicity and potential human health risks.

27      300.    Defendants were negligent by not using reasonable care to warn or instruct about

28  the risks associated with their Fluorosurfactant Products.

301.    Defendants knew or reasonably should have known that their Fluorosurfactant Products were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

302.    Defendants knew or reasonably should have known that users and third parties would not realize the dangers.

303.    Defendants became aware of the human health risks presented by their Fluorosurfactant Products by no later than the year 2000.

304.    Defendants failed to recall their Fluorosurfactant Products.

305.    A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the dangers or instructed on the safe use of Fluorosurfactant Products.

306.    Plaintiffs were, are, and will continue to be harmed.

307.    Defendants' failure to recall their Fluorosurfactant Products was a substantial factor in causing Plaintiffs' harm.

308.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

309.    Although Defendants were aware of the dangers posed by AFFF products, the dangers were unknown and not foreseeable to Plaintiffs.

310.     As a direct and proximate result of Defendants' failure to recall, Plaintiffs suffered personal injuries and costs and damages resulting therefrom.

311.    The Defendants' failure to recall constitutes a causative nexus in Plaintiffs' injuries.

312.     Defendants knew that it was substantially certain that their acts and omissions described above would threaten the health of users and the general public, including Plaintiffs. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others and for the Plaintiffs' health.

1

**SIXTH CAUSE OF ACTION**

2

**VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT**

3    313.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

4    314.    Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent

5    Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439,

6    against E. I. Dupont de Nemours and Company, The Chemours Company, The Chemours

7    Company FC, LLC, Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA

8    Defendants").

9    315.    Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation

10    incurred by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or

11    within a reasonable time not to exceed four years after, the transfer was made or the obligation

12    was incurred, if the debtor made the transfer or incurred the obligation as follows:

13        a.    With actual intent to hinder, delay, or defraud any creditor of the debtor;

14        b.    Without receiving a reasonably equivalent value in exchange for the transfer or

15    obligation of the debtor either:

16            i.    Was engaged or was about to engage in a business or a transaction

17        for which the remaining assets of the debtor were unreasonably small in relation to the

18        business or transaction.

19            ii.    Intended to incur, or believed or reasonably should have believed

20        that the debtor would incur, debts beyond the debtor's ability to pay as they became

21        due."

22    316.    Further, Cal. Civ. Code Ann. § 3439 states that, "[i]n determining the actual intent

23    under paragraph (1) of subdivision (a), consideration may be given, among other factors, to any

24    and all of the following: to all relevant factors including, but not limited to, the following: […]

25    whether before the transfer was made or obligation was incurred, the debtor had been sued or

26    threatened with suit, whether the transfer was of substantially all of the debtor's assets; […]

27    whether the value of the consideration received by the debtor was reasonably equivalent to the

28    value of the asset transferred or the amount of the obligation incurred."

---

**Exhibit A, Page 47**

317.    Upon information and belief, in February 2014, E. I. DuPont de Nemours and Company formed The Chemours Company as a wholly owned subsidiary and used it to spin off DuPont's "Performance Chemicals" business line in July 2015.

318.    Upon information and belief, at the time of the spinoff, DuPont's Performance Chemicals division contained the AFFF and/or PFAS business segments. In addition to the transfer of the Performance Chemicals division, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

319.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

320.    Upon information and belief, as a result of the transfer of assets and liabilities described in this Complaint, DuPont limited the availability of assets to cover judgements for all of the liability for damages and injuries from the manufacture and sale of Fluorosurfactant Products.

321.    Upon information and belief, the UTVA Defendants acted (a) with intent to hinder, delay and defraud parties, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) were engaged or were about to engage in a business for which the remaining assets of Chemours were unreasonably small in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that The Chemours Company would incur, debts beyond its ability to pay as they became due.

322.    The UVTA Defendants engaged in acts in furtherance of a scheme to transfer E. I. DuPont de Nemours and Company's assets out of the reach of parties, such as the Plaintiffs, that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions as described in this Complaint.

323.    As a result of the transfer of assets and liabilities described in this Complaint, the UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale

Exhibit A, Page 48

1  of Fluorosurfactant Products.

2      324.    Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiffs seek to avoid the transfer of

3  E.I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint and

4  to hold the UVTA Defendants liable for any damages or other remedies that may be awarded by

5  this Court or a jury under this Complaint.

6      325.    Plaintiffs further seek all other rights and remedies that may be available to them

7  under UVTA, including prejudgment remedies as available under applicable law, as may be

8  necessary to fully compensate Plaintiffs for the damages and injuries they have suffered as alleged

9  in this Complaint.

10

11                        **SEVENTH CAUSE OF ACTION**
                              **CIVIL CONSPIRACY**

12      326.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

13      327.    At all times relevant herein, Defendants actually knew of the hazards that PFOS

14  and/or PFOA posed to the health of those exposed to these compounds.

15      328.    Beginning in the 1960s and continuing through the date of the filing of this

16  Complaint, Defendants agreed to engage in unlawful and wrongful acts that caused damage to the

17  Plaintiffs. Each Defendant performed at least one overt act in furtherance of this conspiracy.

18  Specifically, Defendants colluded for the avowed purpose of providing information about

19  Fluorosurfactant Products to the public and the government, with the true, unlawful purposes of:

20          a.  intentionally misrepresenting to the EPA and the public that their Fluorosurfactant

21              Products were safe and did not pose a risk to human health and the environment;

22          b.  concealing the dangers of their Fluorosurfactant Products, including the products'

23              characteristics and their propensity to contaminate soil and groundwater, from the

24              government and public by, among other means, repeatedly misrepresenting how

25              Fluorosurfactant Products were being disposed of;

26          c.  concealing the dangers of PFOA and/or PFOS from consumers and the public; and

27          d.  using their considerable resources to fight legislation concerning PFOA and/or

28              PFOS.

**Exhibit A, Page 49**

329.    As a direct and proximate result of Defendants' conspiracy, Defendants' Fluorosurfactant Products at all times relevant to this litigation have:

    a.  Caused physical and emotional injuries to Plaintiffs;

    b.  Caused Plaintiffs to incur, *inter alia*, medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses; and

    c.  required and will continue to require monitoring of Plaintiffs' physical condition.

### TOLLING OF THE STATUTE OF LIMITATIONS

330.    Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

331.    Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

332.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

333.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health until very recently.

334.    During the relevant times, Plaintiffs did not possess specialized scientific or

Exhibit A, Page 50

1    medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could
2    cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical
3    products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have
4    disclosed that AFFF could cause personal injury.

5        335.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims
6    have been tolled by operation of the discovery rule.

7                            **Fraudulent Concealment**

8        336.    Rather than disclose critical safety and health information regarding its AFFF and
9    fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF
10    products.

11        337.    This fraudulent concealment continues to the present day.

12        338.    Wherefore, due to Defendants' knowing and active fraudulent concealment and
13    denial of the facts alleged herein through the relevant time for this action, all applicable statutes
14    of limitations have also been tolled.

15                                **Estoppel**

16        339.    Defendants were under a continuous duty to consumers, end users, and other
17    persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide
18    truthful and reliable safety information concerning their products and the risks associated with
19    their use, as well as exposure to AFFF.

20        340.    Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively
21    concealed important safety information and warnings concerning AFFF and the health risks
22    associated with the same.

23        341.    Wherefore, Defendants are estopped from relying on any statute of limitations in
24    defense of this action.

25                            **PUNITIVE DAMAGES**

26        342.    Under the applicable laws of the State of California, Plaintiffs seek punitive
27    damages due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged
28    throughout this Complaint.

**Exhibit A, Page 51**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PRAYER FOR RELIEF**

343.    Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

    a.    Compensatory damages and all other special damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others;

    b.    Avoiding the transfer of DuPont's liabilities for the claims brought in this Complaint;

    c.    Exemplary and Punitive damages;

    d.    Consequential damages;

    e.    Pre-judgment and post-judgment interest;

    f.    Attorneys' fees; and

    g.    Any other and further relief as the Court deems just, proper, and equitable.

## **JURY TRIAL DEMANDED**

Each Plaintiff hereby demands a trial by a jury on all of the triable issues of this complaint. Plaintiffs do not seek to have their claims tried jointly.

Dated: August 7, 2025

**BARON & BUDD, P.C.**
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Holly Werkema (TX Bar No. 24081202)
*(Pro Hac Vice Forthcoming)*
hwerkema@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Tel.: (214) 521-3605
Fax: (214) 279-9915

**Exhibit A, Page 52**